BANCO LATINO, S.A.C.A., Banco Latino International, a United States corporation, Fondo De Guarantia De Depositos Y Proteccion Bancaria, a semi-autonomous Venezuelan government agency, Cosorcio Inversionista Latino, C.A., a Venezuelan corporation, Banco Maracaibo, S.A.C.A., a Venezuelan corporation, Plaintiffs,

v.

Gustavo A. GOMEZ LOPEZ, Claudia Febres Codero De Gomez, Maria Theresa Pulgar, Folco Falchi, Mery Roffe, De Silberman, Arturo Malave, Adolfo Malave, Fernando Lauria, Elroy Montenegro, Maria Angelica Pulgar, Rosa Maria Rojo Pena, Alejandro Rivera, Giacomo Leon, Hans Abate, Promotora Turistica Bahia Linda, C.A., a Venezuelan corporation, Constructora Juguey, C.A., a Venezuelan corporation, West Merchant Bank limited, a British merchant bank, B.V. Hotel and Spa Acquisition, Ltd., a Florida limited partnership, B.V. Hotel & Spa Acquisition, Ltd., a Florida corporation, Desarrollos Norabe, S.A., a Venezuelan corporation, Socimer fi-

nance Holding, S.A. f/k/a Socimer Finance, S.A., a Swiss corporation, Socimer Nouvelle Societe Commerciale, a Venezuelan corporation, Inversiones Chenonceaux, C.A., a Venezuelan corporation, Antonio Ugueto, Manuel Arcaya, Ignacio Andrade Arcaya, Rafael Abreu, Jesus Abreu, Mario Palenzona, Pedro Gilly, Herberto Urdaneta, John Does 1-100, Defendants.

No. 95–1300–CIV.

United States District Court,
S.D. Florida.

May 13, 1999.

Richard de C. Hinds, Cleary Gottlieb
Steen & Hamilton, Washington, D.C., Jon-
athan Goodman, Akerman, Senterfitt &
Eidson, Miami, Florida, for plaintiffs.

Roberto Martinez, Colson Hicks Eidson Matthews Martinez & Mendoza, Miami, Florida, for defendants.

### *ORDER*

HIGHSMITH, District Judge.

THIS CAUSE is before this Court on the following motions: (1) Defendant Gustavo Gomez Lopez' ("Gomez Lopez") Motion to Quash or to Certify Lack of Service of Process; (2) Defendant Gomez Lopez' Amended Motion to Quash or to Certify Lack of Service of Process; (3) Defendant Gustavo Gomez' Motion for Sanctions against Plaintiff for Destruction of Evidence; and (4) Plaintiff Banco Latino International's ("Banco Latino's") Motion for an Adverse Inference. For the following reasons, all of the foregoing motions are denied.

### BACKGROUND

This action was brought by Banco Latino International ("Banco Latino") against its former directors and officers.[1] The Complaint alleges violations of Federal and State RICO statutes and various common law claims. The claims arise out of a scheme involving purportedly unlawful triangular or back to back placements between Banco Latino and intermediary banks. The unlawful placements allegedly resulted in financial losses which, *inter alia,* weakened Banco Latino and caused it to enter into bankruptcy.

This action was reassigned to the undersigned on December 22, 1998, upon United States District Judge Wilkie Ferguson's recusal. Upon receipt, a review of the record revealed that various issues concerning service upon defendants remained pending in this litigation. One such issue involves Gomez Lopez.

The record reflects that Gomez Lopez entered a special appearance and filed a Motion to Quash or to Certify Lack of Service of Process on December 12, 1995. An amended Motion was filed on December 29, 1995. Both motions were ripe by February of 1996.

On October 18, 1998, Judge Ferguson issued a partial ruling with respect to Gomez Lopez' Motions to Quash or Certify Lack of Service of Process. The Order provided in pertinent part:

> The Court finds that Defendant Gustavo Gomez–Lopez was served with the summons and complaint in this cause. The Court does not address the sufficiency of service or the defendant's Motion to Quash Service which will be handled by separate order
>
> . . .

*See* Order on Notice of Reinstatement of Claims, dated October 8, 1998.

Upon receipt of this case, subsequent to reassignment, the undersigned noted that the issue concerning the sufficiency of the service upon Gomez Lopez remained pending. The Court reviewed the relevant pleadings and the record and discovered that a factual dispute concerning whether Gomez Lopez had in fact been served existed at the time that Judge Ferguson issued his ruling. In fact, both Banco Latino and Defendant Gomez Lopez conceded that an evidentiary hearing was necessary. *See* Amended Motion to Quash or to Certify Lack of Service and Plaintiff's opposition thereto. Accordingly, the undersigned determined that the best course of action was to vacate Judge Ferguson's prior ruling that Gomez Lopez had been served and to conduct an evidentiary hearing on the issue. A hearing was held on April 23, 1999.

### FINDINGS OF FACT

Banco Latino and the other Plaintiffs in this action encountered great difficulty in locating various defendants in this case. In 1995, Banco Latino, through its prede-

---

**1.** This case originally involved five plaintiffs and thirty three named and over one hundred unamed defendants. Currently, as a result of settlements and dismissal pursuant to the doc- trine of *forum non conveniens,* only one plaintiff and approximately nine defendants remain.

cessor counsel Ginsburg, Feldman and Brass, retained Pinkerton Consulting and Investigative Services ("Pinkerton") in London, England, to locate and serve various defendants. One such Defendant was Gomez Lopez. An investigative agency in the United States provided Pinkerton with a picture of Gomez Lopez.

John Batten and other operatives were assigned to find Gomez Lopez. Subsequent to Banco Latino's demise, Gomez Lopez left Venezuela and lived in various locations. Batten maintained a file containing intelligence concerning Gomez Lopez' whereabouts. In November of 1995, Batten received information indicating that Gomez Lopez maintained a residence in Madrid, Spain. Gomez Lopez did in fact live in an apartment located at 4 Calle Columela in Madrid, Spain.

Sometime before November 21, 1995, Batten was informed that Gomez Lopez was at his residence in Madrid, Spain. On November 21, 1995, Batten conducted surveillance outside of the apartment and waited for Gomez Lopez. At approximately 7:46 p.m., Batten noticed a man whom he identified as Gomez Lopez from the photograph he had in his possession.[2] Batten approached the man and asked in English if he was Gomez Lopez. The man responded "what do you want of me?." Batten then identified himself as a process server for an American court and handed Gomez Lopez the summons. Gomez Lopez became angry and exited quickly down the street into a nearby shop. Batten was unable to hand Gomez Lopez a copy of the Complaint. On November 22, 1995, Gomez Lopez left Madrid, Spain and never returned to his apartment.

It should be noted that Gomez Lopez challenges Batten's credibility on the basis that he cannot remember certain specifics concerning the appearance of the man he served on November 21, 1995. In light of the significant lapse of time since the events related above, it is not surprising that Batten's recollection has diminished over time. Nonetheless, Batten unquestionably recalls serving an individual in front of 4 Calle Columela in Madrid, Spain who matched the photograph of Gomez Lopez. Therefore, his failure to remember specifics does not undermine his credibility.

Gomez Lopez testified upon deposition that he was never served a summons in this action and that he was not the man that Batten approached on November 21, 1995. He did, however, imply that he was aware of litigation arising out the failure of Banco Latino.

The Court finds that Gomez Lopez' denial lacks credibility. The evidence reflects that Batten served a man who, based on a photograph, appeared to be Gomez Lopez. The service took place in front of the building in which Gomez Lopez undisputably maintained an apartment. The man who was approached did not say that he was not Gomez Lopez but stated "What do you want of me." Notably, Gomez Lopez left the apartment on November 22, 1995 and never returned. All of these facts in conjunction lead this Court to conclude that the man who was handed the summons by Batten was, indeed, Gomez Lopez.

After Batten served Gomez Lopez, a fee dispute arose between Pinkerton and Banco Latino's predecessor counsel. As a result, the relationship between the law firm and Pinkerton deteriorated and Pinkerton's services were discontinued. Two years later, Batten, after receiving no communications concerning this litigation, de-

**2.** Batten initially filed an affidavit in this action indicating that the time of service was 7:46 a.m. He subsequently filed an amended declaration stating that the actual time that service occurred was 7:46 p.m. Gomez Lopez attempted to persuade the Court that this discrepancy was of great significance. The Court finds this issue to be a tempest in a teacup. Batten testified during his deposition that the actual time was 7:46 p.m. and that the initial affidavit reflecting 7:46 a.m. was due to inadvertence. The Court finds nothing to cast doubt upon Batten's statements.

stroyed his investigative file pursuant to standard company policy.

## DISCUSSION

### *Defendant's Motion for Sanctions.*

■ The federal district courts of this nation possess the inherent power to regulate litigation and to sanction litigants for abusive practices. *Roadway Exp., Inc. v. Piper* 447 U.S. 752, 765, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 126 (S.D.Fla.1987). The power is broader and more flexible than the authority to sanction found in the Federal Rules of Civil Procedure. *Telectron* 116 F.R.D. at 125 (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 951 (9th Cir.1976)). It is well-settled that Courts have the authority to sanction a party who destroys relevant and discoverable evidence. *See e.g. Telectron* 116 F.R.D. at 107.

■ A litigant is under a duty to preserve evidence which it knows, or reasonably should know, is relevant in an action. *Id.* at 126. Sanctions may be imposed upon litigants who destroy documents while on notice that they are or may be relevant to litigation or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence. In this Circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith. *Bashir v. Amtrak*, 119 F.3d 929 (11th Cir.1997). "Mere

negligence in losing or destroying the records is not enough for an adverse inference, as it does not sustain an inference of consciousness of a weak case." *Id.*

■ Pinkerton had possession of the investigative file for approximately two years after Gomez Lopez was allegedly served. Sometime during the two years, a fee dispute arose between Pinkerton and Banco Latino's former counsel. Subsequent to the dispute, Batten and/or Pinkerton had no contact with Banco Latino or its attorneys and the file was disposed of pursuant to standard company procedure. Clearly, Pinkerton's destruction of the file was not premised on bad faith.[3] Therefore, the request for the imposition of sanctions upon Banco Latino is denied.[4]

### *Motions to Quash or Certify Lack of Service of Process*

### Whether Gomez Lopez was Served.

The principle purpose of the service of process rule is to give the defendant notice that an action has been initiated. *E.g. Nichols v. Surgitool, Inc.*, 419 F.Supp. 58 (W.D.N.Y.1976); *Oklahoma Radio Assoc. v. FDIC*, 969 F.2d 940 (10th Cir.1992). Due process requires that the method of service employed be reasonably calculated to give actual notice and to afford an adequate opportunity to be heard. *Avianca Inc. v. Corriea*, 705 F.Supp. 666 (D.D.C. 1989). A plaintiff has the burden of proving proper service of process. *Aetna*

---

3. Gomez Lopez argues that sanctions are appropriate because Banco Latino was negligent or reckless with respect to the spoliation of the evidence. He cites several cases from other jurisdictions wherein courts have sanctioned a party for negligence in connection with the preservation of evidence. *See e.g. Marrocco v. General Motors*, 966 F.2d 220, 224 (7th Cir.1992); *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 167 F.R.D. 90, 103 (D.Colo.1996). This Court will not, however, disregard Eleventh Circuit precedent which clearly imposes a requirement of bad faith for the imposition of sanctions in connection with the destruction of evidence.

4. Banco Latino requests in its response to Gomez Lopez' Motion for Sanctions that the Court draw an adverse inference concerning Gomez Lopez' failure to call Mr. Gonzalez Lopez to the stand. Banco Latino's request hardly warrants discussion because it has not satisfied the two criteria necessary for this Court to apply such an inference. *See Jones v. Otis Elevator Company*, 861 F.2d 655, 656 (11th Cir.1988) (indicating that an adverse inference for failure to call a witness is appropriate if: (1) the requesting party establishes the witness' unavailability in a physical or practical sense; and (2) the potential testimony is relevant and noncumulative.). Therefore, Banco Latino's Motion is summarily denied.

*Business Credit, Inc. v. Universal Decor & Interior Design,* 635 F.2d 434, 435 (5th Cir.1981). In accordance with the above factual findings, the Court concludes that Banco Latino has established that Gomez Lopez was the individual who was handed the summons in this action in front of 4 Calle Columela in Madrid, Spain on November 21, 1995.

### Whether Service was Sufficient.

Gomez Lopez maintains that if the Court finds that he was served, the service must be quashed. Gomez Lopez relies upon two grounds in support of his motion. He contends that the method of service was invalid under Federal Rule of Civil Procedure 4 and the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. ("Hague Convention"). *See* Hague Convention *following* Fed.R.Civ.P. 4. He further argues, in the alternative, that service was improper because he only received the summons and was not handed the Complaint.

### Whether the Method of Service was Valid.

Federal Rule of Civil Procedure 4(f) sets forth the methods for service upon individuals outside the United States. The Rule permits service via "internationally agreed means reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R.Civ.P. 4(f)(1). Section (f) also allows other means of service reasonably calculated to give notice in instances where there is no internationally agreed means of service or the applicable international agreement allows alternative methods of service. Fed.R.Civ.P. 4(f)(2). One of the "other means of service" is delivery of the summons and complaint to the individual personally. *Id.* at 4(f)(2)(C)(i). This alternative method may only be utilized if it is not contrary to the law of the foreign country. *Id.*

Spain is a signatory to the Hague Convention. *See* Hague Convention *following* Fed.R.Civ.P. 4. It is undisputed that personal delivery is not a means of service explicitly set forth in the Convention. Therefore, the determination of whether the method utilized in this case complies with the Hague Convention and the Federal Rules of Civil Procedure requires a two part inquiry. The first component requires an examination of whether the Hague Convention permits alternative methods of service and in what instances. If the Hague Convention allows alternative methods of service of process, then it is necessary to examine whether the particular method used comports with Spanish law.

The question of whether the Convention allows alternative means of service revolves around Article 19. That Article provides:

> To the extent that the internal law of a contracting state to the Convention allows methods of transmission, other than those provided for in the Articles, of documents coming from abroad, for service within its territory, the Convention shall not affect such provisions.

*See* Hague Convention, Article 19 *following* Fed.R.Civ.P. 4.

Article 19 is subject to two different interpretations. One view is set forth in the Supplementary Practice Commentaries immediately following Fed.R.Civ.P. 4 in the United States Code Annotated Pocket Part for 1998. The commentary provides:

> The Convention is not, as has occasionally been supposed, automatically preemptive of all methods that may be used for service abroad. As long as the nation concerned has not, in its ratification or in any other part of its law, imposed any limits on particular methods, or made an unequivocal statement that only specifically listed methods may be used, other methods, like those set forth in paragraph (2) of Rule 4(f) may be resorted to, as the opening words of paragraph (2) recites. As the Third Circuit ob-

served in *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280(CA3), cert. denied 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981), Rule 4's service methods "may be used as long as the nation receiving service has not objected to them."

In this respect Article 19 of the Convention is relevant. It says that if the internal law of the nation concerned "permits methods of transmission, other than those provided for [in the Convention]," the Convention doesn't affect them. We should be able to read the word "permits" in Article 19 to mean "does not prohibit." In order to use one of the methods Rule 4(f) authorizes in paragraph (2), for example, one should not have to show that the method has a precise counterpart (and just how precise?) in the foreign nation's internal law. It should suffice that there is nothing in the foreign law, either explicitly or by compelling implication, to suggest that the method violates some deep-rooted policy of the nation involved. In this respect, we can draw on a well known principle often met in conflict of laws and having perhaps its most celebrated articulation in Judge Cardozo's opinion in *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 120 N.E. 198 (1918): that a state's public policy is not deemed to be violated merely because a foreign law seeking local implementation has no precise cognate in local law.

Donald Siegle, *Supplemental Practice Commentaries* § C4–24 at 64, following 28 U.S.C.A. Rules of Civil Procedure, Rule 4 (West Supp.1998). *See also* Committee on Federal Courts of the New York State Bar Ass'n, *Service of Process Abroad: A Nuts and Bolt Guide*, 122 F.R.D. 63 (1989) ("although compliance with the Convention is 'mandatory', that compliance encompasses not only methods of service that the Convention or the internal law of the foreign state expressly permit but also those methods that neither the Convention nor the internal law of the foreign state prohibit.").

The other view espoused by commentators is that Article 19 only permits alternative methods of service which are specifically authorized by the foreign country. *See* G. Brian Raley, *A Comparative Analysis: Notice Requirements in Germany, Japan, Spain, The United Kingdom and The United States*, 10 ARIZ.J. INT'L & COMP.L. 301, 307 (1993). (stating that contracting states generally construe Article 19 narrowly, thus permitting service only by means specifically enumerated in the receiving country's laws.). Gary A. Magnarini, *Service of Process Abroad Under the Hague Convention*, 71 MARQ. L.REV. 649 (1988) ("In light of the original purpose of article 19, courts should narrowly construe it and only allow the use of alternative service methods which foreign law specifically authorizes.").

Gomez Lopez argues that this Court should adopt the viewpoint that Article 19 only permits alternative methods of service that are provided for under the foreign country's law. He points out that Spain, although authorizing service by delivery, does not permit such service to be effectuated by private individuals. Rather, Spanish law mandates that the deliverer of service be a certain judicial official. Accordingly, he requests that the service of process be quashed.

Banco Latino advocates the interpretation of Article 19 which permits service by any method that is not prohibited implicitly or explicitly by the laws of the foreign country. Accordingly, Banco Latino points out that Spain does not expressly or impliedly prohibit private individuals from serving process arising out of foreign litigation on foreign nationals and requests that the Court find that personal delivery by a private individual is an acceptable mode of service under the Hague Convention.

■ The aim of the Hague Convention is to ensure that individuals receive notice of judicial/extrajudicial documents and to provide a simple and expeditious

procedure. *See* Hague Convention, Preamble *following* Fed.R.Civ.P. 4. A number of courts, although not specifically addressing Article 19, have concluded that service is proper under the Hague Convention so long as it is effected by a method to which the country has not objected. *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 288 (3d Cir.1981) ("It [the Convention] provides that each signatory shall designate a Central Authority to process requests of service, but it also allows service to be effected without utilizing the Central Authority as long as the nation receiving service has not objected to the method.". Thus the more liberal methods provided in the Federal Rules of Civil Procedure and state long-arm rules may be used as long as the nation receiving service has not objected to them); *Lemme v. Wine of Japan Import, Inc.*, 631 F.Supp. 456, 464 (E.D.N.Y.1986) (finding that a party may serve process abroad under any method permitted by the Federal Rules as long as the country receiving has not objected to it in the Hague Convention or otherwise). Consequently, this Court concludes that Article 19 should be broadly construed so as to permit service by any means, subject to the Federal Rules of Civil Procedure, not proscribed by the foreign country.

■ The second question that must be addressed is whether Spain expressly or impliedly prohibits service of process via delivery by a private individual. Both parties have submitted affidavits of Spanish attorneys attesting to the law of Spain. Gomez Lopez has also submitted translations of the pertinent laws. *See* Exhibits

attached to Gomez Lopez' Reply Memorandum in Support of Amended Motion to Quash Service and/or to Certify Lack of Service of Process, dated January 26, 1996.

A review of the declarations and translations of the pertinent provisions of the civil code reveals that personal service by a private individual is not expressly authorized or proscribed. Spanish law does provide for delivery of service by a judicial official. Consequently, delivery of a notice or summons by a private individual would not have legal effect in Spain with respect to an action pending in the local courts. However, it is of great importance that the instant litigation is not pending in Spain and that Gomez Lopez is not a Spanish national. Spain does not prohibit service of a summons arising out of foreign litigation upon a foreign national via hand delivery by a private process server. Nor is there any indication that service of process by a private individual is contrary to any deeply rooted principles of Spanish law. Spain simply has a procedure whereby personal delivery is effectuated by a judicial official. Therefore, this Court concludes that the service in this case was not contrary to Spanish law and the service was sufficient under Federal Rule of Civil Procedure 4(f).[5]

**Whether Failure to Serve the Complaint Renders the Service Insufficient.**

As discussed *supra*, Federal Rule of Civil Procedure 4(f)(2)(C)(i) explicitly provides that in instances where there is no applicable international agreement or the international agreement allows alternative means of service, a permissible method of

---

**5.** Gomez Lopez cites *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476 (3d Cir.1993) as a case directly on point in support of his position that service in this case is contrary to the Hague Convention. In that case, the Third Circuit held that service upon Spanish nationals in Spain was insufficient because it was not in compliance with Spanish law. The case is, however, readily distinguishable.

*Grand Entertainment* was decided prior to the 1993 amendment to Rule 4. The pre–1993

Rule 4 required that service be made in compliance with the foreign jurisdiction's procedures and the law of the foreign country determined the qualifications of the party who delivered service. *Grand Entertainment* 988 F.2d at 486 (citing Fed.R.Civ.P. 4(i) (West 1992)). Accordingly, *Grand Entertainment* is not applicable to the instant case which is governed by the version of Rule 4 that is currently in effect which does not contain the aforementioned restrictions.

service is delivery to the individual personally of a copy of the summons and the complaint. Gomez Lopez maintains that the service was insufficient because he did not receive the Complaint. Banco Latino argues that service was nonetheless valid because Batten's failure to hand over the Complaint was a direct result of Gomez Lopez' actions.

■ It is well-established that once a defendant has actual notice of the pendency of an action, the requirements of Fed.R.Civ.P. 4 are to be liberally construed. *Nichols,* 419 F.Supp. 58. *See also Concepcion v. VEB Backereimaschenbau Halle,* 120 F.R.D. 482 (D.N.J.1988) ("While there must be substantial compliance with the rules of service of process they are to be liberally construed where a defendant has sufficient notice of a complaint."). Notice of a complaint coupled with good faith attempted service is sufficient to confer jurisdiction where a party is evading service of process. *Avianca, Inc. v. Corriea,* 705 F.Supp. 666 (D.D.C.1989). *See also Wood v. Weenig,* 736 P.2d 1053, 1055 (Utah Ct.App.1987) ("... nor should a defendant be able to defeat service merely by refusing to accept the papers ..."); *State v. Counts,* 452 A.2d 1141 (R.I.1982) ("In a variety of circumstances courts have held that delivery of service of process may not be frustrated by the refusal of a person to accept service, or indeed, by actions designed to frustrate the delivery of the process."); *Nielsen v. Braland,* 264 Minn. 481, 119 N.W.2d 737, 739 (1963) ("if the process server and the defendant are within speaking distance of each other, and such action is taken as to convince a reasonable person that personal service is being attempted, service cannot be avoided by physical refusing to accept the summons.").

■ The evidence shows that Batten, the process server, had the Complaint in his possession at the time that he handed Gomez Lopez the summons. Batten testified that he was unable to hand over the Complaint because Gomez Lopez departed

hastily. The undisputed facts reveal that Gomez Lopez has changed his residence and relocated on a regular basis. Indeed, Gomez Lopez' abandonment of his Madrid apartment a day after being handed the summons in this action reeks of evasion. Moreover, Gomez Lopez basically admitted that he was aware of the litigation that was pending. Consequently, this Court concludes that in this particular instance service was effected despite Batten's failure to transfer possession of the Complaint to Gomez Lopez.

### Service was Sufficient Based on Evasion.

■ Notice of a complaint coupled with good faith attempted service is sufficient to confer jurisdiction where a party is evading service of process. *Avianca, Inc. v. Corriea,* 705 F.Supp. 666 (D.D.C.1989). As discussed in the factual findings, Gomez Lopez' actions have an indicia of evasion. Therefore, this Court would recognize the service as sufficient even if it did not comport with the Federal Rules of Civil Procedure and the Hague Convention.

### CONCLUSION

In light of the foregoing, it is

ORDERED AND ADJUDGED as follows:

1. Motion of Gomez Lopez by Special Appearance to Quash Service and/or to Certify Lack of Service of Process is DENIED;

2. Amended Motion of Gomez Lopez by Special Appearance to Quash Service and/or to Certify Lack of Service of Process is DENIED.

3. Plaintiff Banco Latino's Motion for an Adverse Inference is DENIED.

It is further

ORDERED that all parties to this action **shall comply with Southern District of Florida Local Rule 7.1.A.4.** Failure to comply will result in the summary denial

of all future motions and/or the imposition of sanctions.